[806 NE2d 131, 774 NYS2d 106]

BURNELL G. CARNEY et al., by L. DAVID ZUBE, as Chapter 11
Trustee, Appellants, v JAMES V. PHILIPPONE, Respondent.

Argued January 6, 2004; decided February 12, 2004

## POINTS OF COUNSEL

*Hinman, Howard & Kattell, LLP,* Binghamton (*Philip J. Kramer* of counsel), for appellants. I. Examination of the Onondaga County Tax Act and the more significant amendments to it since 1937 leads to the conclusion that in the relevant time frame (1993-1997) the owners' right to redeem from a tax "sale" was at least three years plus any additional time necessary to comply with the required six-month notice provisions. II. The contention raised by defendant Philippone and, to some extent, in the decision of the United States District Court that the passage of the two-year period of time for an owner to redeem set forth in section 8 of the Onondaga County Tax Act automatically takes away the owner's title and right to redeem is without merit. (*Young v Engelstein,* 98 Misc 2d 843, 74 AD2d 1, 53 NY2d 973; *Matter of County of Nassau [Gelb-Siegel],* 24 NY2d 621; *Corvetti v Fidelity Natl. Tit. Ins. Co. of N.Y.,* 258 AD2d 32, 94 NY2d 753; *McHugh v Appler,* 173 AD2d 910.) III. The argument that because the Carneys were "owners" they could not also be "occupants" as that term is used in the Onondaga County Tax Act in effect assumes the Legislature was unaware of terms such as "resident" or "person dwelling on the property."

*Costello, Cooney & Fearon, PLLC,* Syracuse (*Robert J. Smith* and *Nicole M. Marlow* of counsel), for respondent. I. The inconsistencies in the Onondaga County Tax Act can be reconciled, giving effect to both sections 6 and 8 and fulfilling

the legislative intent by construing section 6 as a notice require-ment, which does not extend the statutorily prescribed redemp-tion periods established by section 8 of the Tax Act. (*Cabell v Markham*, 148 F2d 737, 326 US 404; *Matter of Allstate Ins. Co. v Shaw*, 52 NY2d 818; *Matter of Thomas v Bethlehem Steel Corp.*, 95 AD2d 118, 63 NY2d 150; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395; *Matter of Long v Adiron-dack Park Agency*, 76 NY2d 416; *Mennonite Bd. of Missions v Adams*, 462 US 791; *Congregation Yetev Lev D'Satmar v County of Sullivan*, 59 NY2d 418; *Matter of McCann v Scaduto*, 71 NY2d 164; *Maloney v Stone*, 195 AD2d 1065; *Matter of Notre Dame Leasing v Rosario*, 308 AD2d 164.) II. The Carneys are not oc-cupants within the purview of section 8 of the Onondaga County Tax Act. (*Witherhead v Ort*, 223 App Div 626, 249 NY 567; *In-terco Realty Corp. v Perkins*, 49 AD2d 189.)

## OPINION OF THE COURT

Chief Judge KAYE.

Two questions involving the Onondaga County Tax Act have been certified to this Court by the United States Court of Ap-peals for the Second Circuit. While the answers require analysis and elaboration, one conclusion is plain on its face: piecemeal amendments to the statute have resulted in seeming inconsisten-cies, and the Act would benefit from comprehensive legislative review. The issues now before us center on when the right to redeem property expires after a tax sale under the Act. Resolu-tion of this issue is relevant to whether property owners Bur-nell G. Carney and Alice Carney can maintain a malpractice ac-tion against their lawyer, James V. Philippone, for failing to advise them to file for bankruptcy before the redemption period expired.

### I.

The Carneys owned valuable real estate in Manlius, New York on which they operated Sunnyside Nursing Home and Sunny-side Adult Home. In 1993, they failed to pay $61,834.29 in real estate taxes. As a result, the county proceeded with a tax sale and, pursuant to the Onondaga County Tax Act, on October 1, 1993, sold and itself purchased a tax sale certificate, which entitled the county to a tax deed and possession of the property upon the expiration of the owner's redemption period. The fol-lowing year, the Carneys again failed to pay their real estate taxes, and the county sold and purchased another tax certificate for the 1994 taxes. The county resold both certificates to Tax Certificate Associates, Inc. (TCA).

Still in financial straits, in September 1994 the Carneys borrowed $300,000 from Adirondack Capital Management, Inc. (ACM), secured by a mortgage on the property. Richard and Diane Corvetti were the principals of ACM. After the Carneys defaulted on the mortgage, ACM commenced a foreclosure action in November 1995. To settle the action, the Carneys agreed to deliver to ACM a deed to the property—to be held in escrow as security against further defaults—in lieu of foreclosure. In May or June of 1996, after again defaulting on the mortgage, the Carneys retained James V. Philippone as their attorney to handle the litigation with ACM. In July 1996, Philippone negotiated a settlement with ACM whereby the Carneys agreed to transfer title to the nursing home portion of the property to a newly formed corporation, SNH Corporation, while themselves retaining title to the adult home portion of the property.[1]

As of 1996, the Carneys had yet to pay their taxes and redeem their property. As a result, TCA—the tax certificate holder—sent the Carneys a six-month notice to redeem, pursuant to section 6 of the Onondaga County Tax Act. The notice apprised the Carneys that "[i]n the event the tax lien shall not be redeemed on or before six months from the mailing of this notice, the holder will request a deed of said property from the Commissioner of Finance." In order to protect their own interest in the property, on December 24, 1996, the Corvettis purchased the tax sale certificates from TCA, and two days later sent a similar six-month notice to redeem to the Carneys. On June 26, 1997, the Corvettis asked the county to issue them the deed.

Approximately one month later, on July 24, 1997, on the advice of Philippone, the Carneys filed for protection under chapter 11 of the Bankruptcy Code. Because the county had not yet issued the deed to the Corvettis, the county notified them that, in light of the automatic stay resulting from the bankruptcy proceedings, it could not convey the deed (see Bankruptcy Code [11 USC] § 362). As a result, the Corvettis applied to the Bankruptcy Court, which lifted the stay, thereby permitting the county to issue the tax deed to the Corvettis, who then sold the property. The Bankruptcy Court found that under the Onondaga County Tax Act, the Carneys had two years from October 1, 1993 to redeem the property by paying all taxes and

---

1. SNH was formed by ACM and Richard Corvetti for the purpose of taking title to the nursing home parcel. The parties intended that SNH would sell the nursing home property in order to satisfy the mortgage, and the Carneys and ACM would each receive 50% of the net proceeds.

interest due and, the two-year period having long passed before they filed their bankruptcy petition, they had no further interest in the property.

Three years later, in May 2000, the Carneys' chapter 11 Trustee brought an action against Philippone claiming that he committed malpractice by not advising his clients to seek bankruptcy protection until July 24, 1997—after the period for redemption had run. The Trustee claimed that the period of redemption expired June 26, 1997—six months after the Corvettis and TCA served the Carneys with redemption notices—and that had the Carneys filed under chapter 11 before that time, they might have retained their property rights. Philippone sought summary judgment or dismissal of the Trustee's action, contending that the period of redemption had expired before he was retained to represent the Carneys.

The United States District Court for the Northern District of New York granted Philippone summary judgment dismissing the complaint (*Carney v Philippone*, US Dist Ct, ND NY, Scullin, Ch. J., 5:01-CV-557 [June 5, 2002]). The court concluded that it was collaterally estopped by the Bankruptcy Court's finding that the Carneys had lost their interest in the property by October 1, 1995, months before they hired Philippone, and that any alleged malpractice therefore could not have been a proximate cause of their losses. Even if not bound by collateral estoppel, the District Court agreed with the Bankruptcy Court's interpretation of section 6 of the Act: that the statutory redemption period was two years, measured from the tax certificate sale, unless shortened by a six-month notice of redemption. The court rejected as "nonsensical" the Carneys' argument that a six-month notice of redemption is *absolutely* required:

> "Were that true, § 6 would render § 9 inoperative. Section 9 clearly states: '[N]o other, further or different notice of the expiration of the time to expire shall be required to be published, served upon or given to any person whatever.' § 9. The Court finds that § 9 makes it very clear that the six-month notice of redemption is not the exclusive method for a tax certificate holder to obtain absolute title. Running of the applicable two- or three-year time limit is also sufficient."

On the Trustee's appeal, the United States Court of Appeals for the Second Circuit observed that collateral estoppel did not

apply and that the Carneys' right of redemption was governed by sections 6, 8 and 9 of the Act. But the court found "textual ambiguities" and "nettlesome inconsistencies" in these sections, which it was "unable to harmonize" (332 F3d 163, 165, 169, 171 [2d Cir 2003]):

> "Section 8 permits an 'owner' to redeem within two years of a tax sale, whereas an 'occupant' can redeem within three years of such a sale 'and not thereafter.' Section 6, however, can be read to provide that, even if two or three years pass after a tax sale, a certificate holder must still serve a notice to redeem upon the owner and occupant before the county can convey title. Section 6 also implies that, following service of this notice, the owner and occupant will have another six months to redeem the property. Thus, under one section of the statute— Section 8—the right to redeem appears to be cleanly cut off after three years, in the case of occupants, and two years, in the case of owners. However, another section of the same statute—Section 6—apparently provides that a right to redeem is *never* terminated until six months after a notice to redeem has been served. If the six-month notice is never served, does a right to redeem exist in perpetuity? To complicate matters, the Tax Act does not define 'occupant.' Consequently, it is unclear whether this term applies to the Carneys, who ran a nursing home and an adult home on their property, or whether 'occupant' is synonymous with 'resident' " (*id.* at 169).

The court posited three different dates under the Act when the Carneys' right to redeem might expire: first, six months after they received notice from the Corvettis; second, two years after the October 1, 1993 tax sale; and third, if the Carneys were "occupants," three years after the tax sale (*id.* at 171). If the first or third option applied, then Philippone was the Carneys' lawyer during the relevant time period, and a malpractice action might lie. Finding it difficult to determine which of these three interpretations of a state statute to adopt, the court certified two questions to us:

> "(1) Under the Onondaga County Tax Act, is an owner's right to redeem his property, after its sale for taxes, strictly limited to two years even when

the tax sale purchaser fails to send the owner a notice to redeem during that period? Or does the right of redemption survive until six months after the tax sale purchaser sends a notice to redeem, even if that six-month period ends more than two years after the tax sale?

"(2) Does the term 'occupant' in section 8 of the Onondaga County Tax Act include an individual who operates a business on a property but does not reside there? If an individual is both an owner and an occupant, does he have three years following a tax sale in which to redeem the property?" (332 F3d at 172.)

## II.

Our answers to the certified questions are guided by two overarching principles. First, our role is to discern and implement the will of the Legislature and attempt—by reasonable construction—to reconcile and give effect to all of the provisions of the subject legislation. Second, statutes authorizing tax sales are to be liberally construed in the owner's favor because tax sales are intended to collect taxes, not forfeit real property (*see* 13 Warren's Weed, New York Real Property, Tax Sales § 1.03 [4th ed]).

### The Period of Redemption

As noted by the Second Circuit, three sections of the Act are relevant to fixing the period of redemption: sections 6, 8 and 9.

Section 8 (entitled "Redemption") provides tax-delinquent owners and occupants with a right of redemption for real property purchased at tax sales:

"The owner, or any other person at any time within two years from the last day of [the tax] sale, and the occupant or holder of any mortgage duly recorded at the time of the sale thereof at any time within three years after the sale and not thereafter, may redeem any property sold for taxes . . . by paying to the county commissioner of finance, for the use of the county, or if such purchaser be a private purchaser for the use of such purchaser or those claiming under him, as the case may be, the sum mentioned in the certificate of sale with interest thereon at the rate of twelve percent per annum to be calculated from the date of such certificate."

Section 9 ("Unredeemed land") provides for notice by publication to tax-delinquent owners and occupants. The County Commissioner of Finance shall,

"at least three months before the expiration of the time allowed for the redemption of lands sold by him for taxes, cause a notice to be published once in each week for two weeks successively in at least one newspaper published in said county, containing a list of the lands in such county sold for taxes and unredeemed specifying particularly every parcel unredeemed, and the amount necessary to redeem the same, calculated to the last day in which such redemption can be made, and stating that, unless such lands are redeemed by a specified day, they will be conveyed to the county, or if such purchaser be a private purchaser, to such private purchaser."

Under section 9, until notice of the expiration of the time to redeem is published, the time to redeem does not expire. Additionally, section 9 provides that "[n]o other, further or different notice of the expiration of the time to redeem shall be required to be published, served upon or given to any person whatever."

Finally, section 6 ("Publication") provides:

"Before making such application the owner of a tax sale certificate acquired subsequent to the effective date of this act shall serve a notice to redeem by certified or registered mail, return receipt requested, upon the record owner, mortgagee, if any, and occupant, if any, of the real property affected by said tax sale certificate."

Notice pursuant to section 6 must describe the property, declare the amount due, specify the relevant interest rates and fees, and contain a "statement that in order to redeem said property the total amount due must be paid to the Onondaga county commissioner of finance within six months from the date of mailing of said notice." (§ 6 [d].)

Background of the Act

The history of the Act illuminates the issues. The Onondaga County Tax Act was adopted in 1937 to provide for the collection of taxes and procedures for handling tax delinquent property in the county (see L 1937, ch 690). The initial redemption period for owners, occupants or any other person was two years

after the last day of the tax sale; mortgage holders were given one year after the recording of the conveyance to redeem their property (see L 1937, ch 690, § 8). Only notice by publication was required.

In 1964, the Act was amended to bring the redemption periods for occupants and mortgage holders into alignment with the Real Property Tax Law (see Mem for the Governor, Bill Jacket, L 1964, ch 768, at 1). The time for redemption for occupants and mortgage holders increased to three years after the last day of the tax sale (compare L 1964, ch 768, § 2, with RPTL 1022, 1024 [McKinney's Cons Laws of NY, Book 49A, 1960 ed]). The 1964 amendments did not, however, mirror the Real Property Tax Law in all respects. Most significantly, the Legislature did not include a provision of the Real Property Tax Law that had the effect of shortening the redemption period for an occupant or mortgage holder if personally served with a notice to redeem before expiration of the statutory period (see Mem for the Governor, Bill Jacket, L 1964, ch 768, at 2-3).[2] In amending the Onondaga County Tax Act, the Legislature appears to have considered—and rejected—this option (see Letter from County of Onondaga Dept of Law, Apr. 2, 1964, Bill Jacket, L 1964, ch 768, at 9 ["In Onondaga County we are not interested in shortening the redemption period and therefore do not provide for personal service"]).[3]

In 1971, section 6 of the Act was amended to provide for personal service of a notice to redeem. "Great inequities and substantial enrichment ha[d] occurred, especially in Onondaga County, because the actual owner, even though an occupier of the land, did not realize that the taxes were unpaid, and consequently lost their property" (see Letter from Senator Tarky Lombardi, Jr., May 17, 1971, Bill Jacket, L 1971, ch 1092,

---

**2.** RPTL 1022 permitted holders of tax sale certificates or anyone claiming under them after expiration of one year from date of sale to reduce this period of redemption by serving written notice on the person occupying the property either personally or by leaving the same at the residence of the occupant. The notice stated (1) the sale and conveyance of the property, (2) the person to whom made, (3) the amounts required for redemption and (4) that unless such amounts are paid to the county treasurer for the benefit of the grantee or those claiming under him within six months after filing notices of the service, the conveyance in question would become absolute and the occupant and all others be forever barred from redeeming the property (see RPTL 1022 [McKinney's Cons Laws of NY, Book 49A, 1960 ed]).

**3.** The 1964 amendments were passed after a similar bill was vetoed by the Governor (see Senate Intro 3398, Print 3661 [1963]), because it shortened the period of redemption for an occupant or owner from two years to one year.

at 2). The bill "intended to prevent taxpayers from losing their property or mortgagees from losing their security interest without notice or knowledge of the possibility" (*id.*). It sought to afford due process by setting up procedures for notice to taxpayers beyond "mere publication" of a list of the affected properties in a local newspaper, requiring "the purchaser of a tax sale certificate to make a diligent search for the identity and whereabouts of the people who are interested in the property and to give such persons notice of the tax lien, the right to redeem and the consequences of failure to do so" (Letter from County of Onondaga Dept of Law, May 19, 1971, Bill Jacket, L 1971, ch 1092, at 7).[4]

Reading the words of the Act against this statutory background, we are persuaded that the Legislature's primary purpose in its most recent relevant amendment to the Act was to provide actual notice to property owners, consonant with the requirements of due process.[5] Thus, we conclude that a tax certificate holder must give an owner or occupant a six-month notice to redeem, as provided in section 6, and that without such notice there can be no transfer of the property to the tax certificate holder. The provision of section 9, that no other notice of the time to redeem shall be required, was implicitly amended by

---

4. The Trustee contends that additional 1971 amendments to section 6 eliminated the two- and three-year redemption periods provided in section 8. The relevant amendments provide that the Commissioner of Finance may sell and assign any certificate of sale of lands bid in for the county at any time before the expiration of "three years after the date of the tax sale" (L 1971, ch 1092, § 1). If any parcel sold for taxes is not redeemed within "said three year time limit in the manner set forth in section eight," the Commissioner shall execute to the purchaser a conveyance (*id.*). The Trustee argues that this amendment makes clear that the time when a tax certificate holder can apply for a deed is no longer tied to the two- and three-year redemption period in section 8—it is now three years, regardless of the interest in the property. This argument is unsupported by the legislative history, and unpersuasive. The amendment merely suggests that three years is the outer limit within which redemption may occur under section 8. The amendment sought to remedy an anomaly in the law that prevented the county from selling a tax sale certificate on a vacant lot between the second and third year after the tax sale (*see* Letter from Senator Lombardi, May 17, 1971, Bill Jacket, L 1971, ch 1092, at 2-3).

5. In 1994, the New York State Legislature adopted the Uniform Delinquent Tax Enforcement Act, which provided for a uniform system of tax collection throughout the state (*see* RPTL 1100-1186). Onondaga County opted out of the Real Property Tax Law in April 1994, by Local Law No. 4 (1994), which authorized the continuation of the enforcement of the collection of real property taxes according to the Onondaga County Tax Act.

the later, clearly deliberate requirement of personal service of a notice to redeem.

But how does this requirement fit within the balance of the Act? When must personal service of the mandatory six-month notice to redeem be made?

■ Section 8 of the Act provides that owners may redeem within two years and occupants within three years—"and not thereafter." The section 8 redemption periods were not amended in 1971 when the requirement of personal service of a six-month notice to redeem was added. What is clear from the statute's history, however, is that the Legislature was most definitely not interested in shortening the redemption period—it earlier rejected that opportunity. Thus, the provision for personal service of the six-month notice to redeem cannot shorten the two- and three-year time frames prescribed by section 8. By the same token, in order to give effect to the phrase *"and not thereafter"* in section 8, the six-month notice requirement cannot lengthen the two- and three-year redemption periods. Accordingly, we conclude that an owner must be served with a notice to redeem six months before expiration of the two-year redemption period; an occupant must be served with a notice to redeem six months before expiration of the three-year redemption period.

The Second Circuit's understandable concern that the right to redeem might exist in perpetuity, or that a cloud on title could endlessly hover over the property, is addressed by application of the time periods clearly specified in section 8. Morever, as a final outside date, section 6 of the Act provides that "[i]f application for a conveyance is not made within five years from the last day of the tax sale, the tax sale certificate . . . shall become void and no claim may thereafter be maintained on such certificate" (L 1967, ch 677, § 1).

Thus, we answer the Second Circuit's first question as follows. An owner's right to redeem is limited to two years. Eighteen months into that period, a tax sale purchaser—before it can request a deed for the property—must give notice to the owner.

## Occupant or Owner

Addressing the second certified question, section 8 of the Act prescribes different redemption periods based on an individual's interest in the property. This distinction was introduced in 1964, in order to bring the Act more into line with the Real Property

Tax Law (*see* L 1964, ch 768, § 2). At the time, "occupant" was defined in the Real Property Tax Law as "a person who has lawfully entered and is in possession of the real property to the exclusion of every other person" (RPTL 1022 [7] [McKinney's Cons Laws of NY, Book 49A, 1960 ed]). This definition appears to include a person who operates a business on the property but does not reside there. There is no indication that the Legislature intended the term occupant to be synonymous with residency.

■ While the statutory history does not set forth the rationale for the distinction between owners and occupants, a reasonable explanation for allowing a longer period for occupants is that tax notices routinely are directed to the property owner; significant additional time may pass before a mere occupant discovers a tax delinquency. Applying that rationale, we conclude that an owner should be held to the two-year period to redeem property, whether or not that person is also an occupant. Thus, as to the Second Circuit's two-part second question, we answer the first part in the affirmative, and the second part in the negative.

Finally, were there a shred of doubt as to the desirability of a comprehensive review of the statute by the Legislature, we trust that this writing, together with the writings of the Bankruptcy Court, the District Court and the Second Circuit, are sufficient to dispel it.

Accordingly, the certified questions are answered in accordance with this opinion.

Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo and Read concur; Judge R.S. Smith taking no part.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.