[860 NE2d 51, 826 NYS2d 589]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STERLING A. CAGLE, Appellant.

Argued October 19, 2006; decided November 20, 2006

## POINTS OF COUNSEL

*Frank J. Nebush, Jr., Public Defender*, Utica (*Robert R. Reittinger* of counsel), for appellant. Defendant was out of prison on work release for a period of time in regard to his sentence for his first felony conviction, and therefore that period of time should not be counted as part of the 10-year time period to enhance his present conviction to a second felony offender offense. (*People v Varrecchia*, 141 Misc 2d 1; *People v Tatta*, 196 AD2d 328; *People v Cruz*, 48 NY2d 419; *People v Shafer*, 30 AD2d 213; *People v Orr*, 57 AD2d 578; *People ex rel. Kornaker v Meloni*, 134 Misc 2d 444; *People v Melendez*, 7 Misc 3d 1004; *People v Parker*, 186 AD2d 593; *People v Ogarra*, 1 Misc 3d 901.)

*Michael A. Arcuri, District Attorney*, Utica (*Steven G. Cox* of counsel), for respondent. Defendant assigned to "work release" status by the Department of Correctional Services is nevertheless "incarcerated" for purposes of determining his status as a second felony offender. (*People v Orr*, 57 AD2d 578; *People v O'Garra*, 1 Misc 3d 901[A], 2003 NY Slip Op 51457[U], 16 AD3d 251, 5 NY3d 766; *Matter of Hall v Zenzen*, 20 AD3d 840; *McNamara v Coughlin*, 228 AD2d 356; *People v Tatta*, 196 AD2d 328; *People v Varrecchia*, 141 Misc 2d 1.)

## OPINION OF THE COURT

Chief Judge KAYE.

A second felony offender subject to enhanced punishment is one whose sentence for a prior felony has been imposed not more than 10 years before the commission of the felony for which that person presently stands convicted; excluded from the 10 years are any periods during which the individual has been incarcerated (Penal Law § 70.06 [1] [b] [v]). This appeal asks whether defendant was "incarcerated" while serving a portion of his prior sentence of imprisonment in a day-reporting program. We answer that he was.

Defendant was charged with three counts of criminal possession of a controlled substance in the third degree and one count of criminal use of drug paraphernalia in the second degree, all taking place on November 8, 2002. He agreed to plead guilty to two counts of criminal possession of a controlled substance in

the third degree, in full satisfaction of the indictment. As part of his plea bargain, defendant further agreed to be sentenced as a second felony offender based upon a prior felony conviction for first-degree robbery occurring on March 25, 1991. For that crime he served a sentence of imprisonment from April 16, 1991 to February 23, 1993, his date of parole.

At sentencing for his current conviction, however, defendant argued that he could not be sentenced as a second felony offender because more than 10 years had elapsed between imposition of the sentence on his prior felony and commission of the current felonies. Defendant produced documentary evidence from the Department of Correctional Services (DOCS) demonstrating that, as of September 28, 1992, his earlier sentence had been converted to day-report status. Defendant argued that, as of September 28, 1992, he was no longer incarcerated, and because his current felonies were not committed until November 8, 2002—more than 10 years later—he was not in fact a second felony offender under Penal Law § 70.06 (1) (b).

The People contended that the 10-year period should be tolled for the entire time defendant spent serving the sentence of imprisonment on his robbery conviction—including while in the day-reporting program—and thus his current felonies were committed within the statutory period. County Court rejected defendant's argument and sentenced him as a second felony offender to concurrent sentences of imprisonment of 4½ to 9 years. A divided Appellate Division affirmed, as do we.

Penal Law § 70.06 (1) (b) provides:

> "For the purpose of determining whether a prior conviction is a predicate felony conviction the following criteria shall apply . . .

> "(iv) Except as provided in subparagraph (v) of this paragraph, sentence [for the prior felony] must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted;

> "(v) In calculating the ten year period under subparagraph (iv), any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be

extended by a period or periods equal to the time served under such incarceration . . . ."

Defendant contends that his time spent in a day-reporting program cannot act to extend the 10-year period because he was not "incarcerated." Under the statute, read literally or contextually, defendant is wrong. Indeed, from September 28, 1992 until February 23, 1993—including the five months he was in the day-reporting program—defendant was confined (and in that sense "incarcerated"), serving out his sentence of imprisonment under the custody and control of DOCS.

An inmate in a day-reporting program, under the applicable statutes and regulations, enjoys "extended bounds of confinement" (see Correction Law § 851 [10]; § 855 [5], [7]; 7 NYCRR 1926.2 [a] [4]). An approved inmate who has successfully participated in a work release program, completed furloughs to an approved residence and is either within six months of becoming eligible for parole or has one year or less to be served under his sentence, may be assigned from a work release facility to a residential treatment facility to participate in a program of continued employment (see 7 NYCRR 1925.2). While residing at an approved residence, the inmate is required to report to the facility or other designated reporting location, to undergo frequent drug tests and, where appropriate, to participate in other rehabilitative programs.[1]

Moreover, before acceptance into a day-reporting program, an inmate must sign both a memorandum of agreement and copy of the day-reporting rules (7 NYCRR 1926.1). These documents specify that participation in the program "is a privilege which may be revoked at any time" and that the inmate "remain[s] in the custody of [DOCS]" (7 NYCRR 1926.2 [c]; 1926.3).[2] The program imposes reporting duties and travel restrictions, including prior approval requirements for any method of transportation the inmate uses, for obtaining a driver's license and for having a motor vehicle (7 NYCRR 1926.3). Permission is also required before participants take any medication (except in exigent circumstances), obtain a credit card or enter into a

1. Though not determinative, we note that nothing in the record suggests that defendant resided outside of a state correctional facility for any period of time while participating in the day-reporting program.

2. These factors, among others, distinguish day-reporting programs from parole. In addition, unlike parole, the privilege of participation in a day-reporting program may be revoked without a hearing or other process (see Correction Law § 855 [6], [9]; 7 NYCRR 1904.1, 1927.5).

contract, and they must surrender the full amount of their employment earnings to the day-reporting center for documentation and proper deductions. Thus, inmates in day-reporting programs are merely granted the revocable privilege of serving their sentences of imprisonment under less strict conditions of supervision than other prisoners under lock and key.

Focus on the plain purpose of Penal Law § 70.06 also leads us to reject defendant's argument. The statute is intended "to deter recidivism by enhancing the punishments of those who, having been convicted of felonies, violate the norms of civil society and commit felonies again" (*People v Walker*, 81 NY2d 661, 665 [1993]). To avoid enhanced punishment, prior felons must demonstrate their ability to live within the norms of civil society for 10 years. Plainly, time spent serving a sentence of imprisonment does not satisfy this requirement. That the Legislature has spoken in terms of time "incarcerated" does not compel us to limit the term to "behind bars" (*cf. People v Love*, 71 NY2d 711 [1988] [periods of wrongful incarceration are not included in the statutory toll]). Rather, we conclude that defendant should be considered incarcerated until he completed his sentence of imprisonment for the prior crime and was released into parole. Indeed, the sparse legislative history supports this sensible construction: "The alleged second felony offense must occur within 10 years after the defendant was released from a prison term on the first felony" (Governor's Mem approving L 1973, ch 277, 1973 NY Legis Ann, at 4).

Here, defendant remained incarcerated until he was paroled on February 23, 1993. Because he committed his current drug felonies on November 8, 2002—less than 10 years later—he was properly sentenced as a second felony offender.

Accordingly, the order of the Appellate Division should be affirmed.

R.S. SMITH, J. (dissenting). "Incarcerated" is not an ambiguous word. It means locked up in prison. Defendant in this case was not incarcerated during the time in question. He not only worked outside the prison walls, but ate and slept in an "approved residence"—which can mean, and in this case apparently did mean, the home of his family (*see* 7 NYCRR 1925.2, 1927.4, 1901.1 [c] [2] [i] [a]). The facts relied on by the majority—that defendant was required to report to a certain location daily, to undergo frequent drug tests, perhaps to participate in rehabilitative programs, and to sign a document to the effect

that his nonincarcerated status "may be revoked at any time" (majority op at 650)—do not alter the simple fact that he was not incarcerated.

Relying on the phrase "extended bounds of confinement"—a phrase used in the Correction Law in a different context (*see* Correction Law § 851 [10])—the majority essentially turns the word "incarcerated" into a metaphor. Because defendant was not free to go anywhere he liked, the majority reasons, he was in a sense "confined," and "in that sense 'incarcerated' " (majority op at 650). But there is no reason to think that the Legislature was speaking metaphorically when, in Penal Law § 70.06 (1) (b) (v), it excluded "any period of time during which the person was incarcerated" from the 10-year period prescribed in the statute governing second felony offenders (Penal Law § 70.06 [1] [b] [iv]).

The point of the exclusion is obvious: People who are incarcerated have little opportunity to commit felonies, and so do not get credit for the time in which they did not do so. The opportunities for criminal conduct by a person no longer incarcerated—even if he is required to report daily to a specified location—are incomparably greater. Defendant's situation during his time in the day reporting program was not greatly different from that of someone on probation or parole—who, it is undisputed, is not "incarcerated" within the meaning of this statute. The line the majority draws is thus less satisfactory than the one the Legislature drew—between people who are in prison and who are not.

Judges CIPARICK, ROSENBLATT, GRAFFEO and READ concur with Chief Judge KAYE; Judge SMITH dissents in a separate opinion; Judge PIGOTT taking no part.

Order affirmed.