OPINION OF THE COURT
Daniel Conviser, J.
The defendant is charged with criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fifth degree, criminal possession of stolen property in the fifth degree, criminally using drug paraphernalia in the second degree and unlawful possession of marijuana. After discussing a possible plea by the defendant with the parties, it became evident that this case would likely be able to be resolved with a plea. Before proceeding, however, it became evident that the court’s determination regarding whether the defendant had a predicate felony conviction might have a significant impact on any sentence which would be promised pursuant to an agreed-upon plea. The parties indicated that they had already briefed a contested issue of first impression with respect to defendant’s predicate felony status and the court determined that it would resolve that issue before proceeding with a possible plea agreement.
The issue of defendant’s predicate felony status hinges upon one issue: does the time which Mr. Cuesta previously spent in detention by the Immigration and Customs Enforcement agency (ICE) constitute “incarceration” which would serve to toll the running of the 10-year period within which a person must have been convicted of a prior felony in order to be deemed a predicate felony offender. If such detention is “incarceration” under the statute, the parties agree, Mr. Cuesta would likely be adjudicated as a predicate felony offender. If such detention is not incarceration, then Mr. Cuesta would be considered a first felony offender. For the reasons stated below, the court holds that incarceration under the statute does not include the period of time during which Mr. Cuesta was detained by ICE. For this reason, Mr. Cuesta would appear to be a first felony offender for purposes of sentencing.
Statement of Facts
The relevant facts can be briefly summarized. Mr. Cuesta was convicted of criminal possession of a controlled substance in the third degree on November 2, 1990. He was sentenced on April 9, 1992 to an indeterminate sentence with a term of 90 months *595 to 15 years. He was in the custody of the New York State Department of Correctional Services (DOCS) from April 9, 1992 until November 12, 1998. He was thereafter transferred to the custody of ICE where he remained until July 13, 2000. The instant crimes are alleged to have occurred on or about March 27, 2009. On July 31, 2009 the People issued a “Statement of Predicate Felony Conviction for Drug Offender” under the instant indictment. It recounts defendant’s prior conviction and prior correctional confinement. It then notes that “[o]n November 12, 1998, the defendant was transferred to the custody of Immigration and Customs Enforcement, and remained in the custody of Immigration and Customs Enforcement until July 13, 2000.” By virtue of this detention, the People assert, the 10-year period within which a defendant must have been previously convicted of a crime in order to be a predicate felony offender was tolled and when this toll is included in the relevant calculations the defendant was previously convicted of a felony within 10 years of his instant alleged crimes.
The court has not been given documentation detailing defendant’s ICE confinement and subsequent release. The court understands, however, that the general sequence of events with respect to Mr. Cuesta’s detention and release are not disputed. The defendant was detained by ICE because his criminal conviction for a narcotics felony made him subject to deportation. Mr. Cuesta, however, immigrated to the United States from Cuba. The parties have indicated that the United States does not deport persons to Cuba. Mr. Cuesta was apparently held for a period of time while ICE determined his status and also apparently explored whether Mr. Cuesta could be deported to a country other than Cuba. When it was determined that no deportation to either Cuba or another country could be effectuated, Mr. Cuesta was released from ICE custody. The parties also do not appear to dispute that the defendant was actually confined and not in any respect living freely in civil society during the period of his ICE detention.
Conclusions of Law
It is axiomatic, of course, that in construing a statute courts should strive to give effect to the intent of the Legislature. (Carney v Philippone, 1 NY3d 333 [2004], rearg denied 2 NY3d 794 [2004].) In this case the Legislature’s intent with respect to the disputed provision can be gleaned from the words used in the substantive statute defining the tolling rule, the obvious mean *596 ing of those words in the context in which they appear, the language of the procedural statute pursuant to which determinations about predicate felony status are made (CPL 400.21), legislative history concerning the 1973 enactment of the law, case law interpreting the statute and the statute’s purposes. When all of these sources are considered together, in the court’s view, it is clear that the Legislature intended the tolling provision at issue here to apply to sentences imposed for the commission of crimes and not other forms of confinement.
Penal Law § 70.70 (1) (b) defines a “[sjecond felony drug offender” eligible for enhanced sentences under the drug laws as a second felony offender, as that term is defined by Penal Law § 70.06 (1), who stands convicted of a felony drug offense. Penal Law § 70.06 (1), in turn, defines the circumstances under which a prior conviction qualifies as a predicate felony conviction for sentencing purposes. In its initial passages, it is apparent that the statute’s timing requirements focus not so much on a defendant’s prior conviction as his prior sentence. The statute requires that the authorized sentence for the conviction be above a certain minimum term and that the sentence for the prior conviction precede the commission of the instant felony and clarifies that a number of specified dispositions constitute sentences under the statute (Penal Law § 70.06 [1] [b] [i], [ii], [iii]). The provision directly at issue here is the requirement that a previous sentence must have been imposed within 10 years of the commssion of an instant offense in order for a defendant to be a predicate felony offender and that provision’s incarceration tolling requirement. The language of the statute reads as follows:
“(iv) Except as provided in subparagraph (v) of this paragraph, sentence must have been imposed not more than ten years before commission of the felony for which the defendant presently stands convicted;
“(v) In calculating the ten year period under subparagraph (iv), any period of time during which the person was incarcerated for any reason between the time of the commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served under such incarceration.” (Penal Law § 70.06 [1] [b] [iv], [v].)
Standard dictionary definitions of the words “incarceration” or “incarcerate” are not particularly illuminating with respect *597 to the question here. One standard definition which is used for these terms broadly defines incarceration as the process of “confinement,” suggesting that detention like that the defendant was subjected to by ICE would be included within that term. These same definitions, however, indicate that a synonym for “incarceration” is the word “imprisonment,” which connotes a more narrow reading of the term limited to detention in a jail or prison.[1]
The argument that the word “incarceration” was intended to apply only to imprisonment as punishment for a criminal conviction or adjudication rather than other forms of confinement is strongly supported by the surrounding provisions of the statute. Penal Law § 70.06 (1) (b), as noted supra, is focused on defining how the date of an instant offense relates to the date of a previously imposed criminal sentence. Most significantly, the 10-year period is measured from the date of a previously imposed criminal sentence, rather than a previously imposed period of confinement for any reason, the date of a previous crime, the date of a previous conviction, or some other reference point. Subparagraph (iv) of the statute contains the rule that this previously imposed criminal sentence must have been within 10 years of the commission of the instant felony. Subparagraph (v) refers directly back to the preceding subparagraph, which deals with criminal sentences.
Subparagraph (v) says that in looking back to the previous criminal sentence, which is the reference point, the time a person is incarcerated is excluded. Read in context, it is clear that subparagraph (v) refers back to the criminal sentence which is discussed not only in the immediately preceding subparagraph, but in the immediately preceding four subparagraphs. It is not referring to forms of confinement which are not criminal sentences. “[W]ords employed in a statute are construed in connection with, and their meaning is ascertained by reference to, the words and phrases with which they are associated.” (McKinney’s Cons Laws of NY, Book 1, Statutes *598 § 239; see also Popkin v Security Mut. Ins. Co. of N.Y., 48 AD2d 46 [1st Dept 1975].)[2]
That is made more clear, in the court’s view, by the proviso in subparagraph (v) that the 10-year period is extended by the “time served under such incarceration.” “Time served” is both a term used in the Penal Law to define criminal sentence lengths (see e.g. Penal Law § 70.30 [5]) and a form of criminal sentence imposed by courts when a sentence is satisfied by the period of time an offender has already served in jail or prison. Like the remaining provisions of the statute, the term “time served” clearly connotes a criminal sentence rather than some other type of involuntary confinement. “[W]ords having a precise and well settled legal meaning in the jurisprudence of the state are to be understood in such sense when used in statutes, unless a different meaning is plainly indicated.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 233, Comment; see also People v Reed, 265 AD2d 56, 66 [2d Dept 2000], lv denied 95 NY2d 838 [2000].)
Whatever ambiguity might arguably exist in the language of the Penal Law, moreover, is further clarified when the procedure provided by the Criminal Procedure Law for determining whether or not a defendant is a predicate felony offender is considered. That procedure is contained in CPL 400.21. The statute provides that the People are required to file a statement of predicate felony conviction. The statute further provides that when a toll based on incarceration is alleged in the running of the 10-year period:
“[S]uch statement also shall set forth the date of commencement and the date of termination as well as the state or local incarcerating agency for each period of incarceration to be used for tolling of the ten year limitation set forth in subparagraph (iv) of paragraph (b) of such subdivision” (CPL 400.21 [2] [“such subdivision” referring to subdivision (1) of Penal Law § 70.06]).
With respect to ICE detention, there is obviously no “state or local incarcerating agency” which confines a defendant. Thus, in this case, it is impossible for the predicate felony statement filed by the People to be in compliance with the literal terms of *599 the statute. CPL 400.21 defines the procedural rules, rather than the substantive requirements, applicable to a predicate felony determination. Nevertheless, “[w]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning.” (People v Kisina, 14 NY3d 153, 158 [2010], quoting Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86 [2001].)
The sparse legislative history which accompanied the enactment of the statute in 1973 also strongly supports the view that the statute’s tolling provision references jail or prison confinement rather than other forms of detention. In his memorandum approving the provision, the Governor wrote: “The alleged second felony offense must occur within 10 years after the defendant was released from a prison term on the first felony or within 10 years when sentence other than imprisonment was imposed for the first felony.” (Governor’s Mem approving L 1973, ch 277, 1973 NY Legis Ann, at 4 [emphasis added]; see also People v Cagle, 7 NY3d 647, 651 [2006] [discussed infra], citing Governor’s Mem.) The Governor’s memorandum clearly indicates that the 10-year tolling provision was intended to address “prison terms.” Whatever ambiguity might exist with respect to the word “incarcerate,” a “prison term” clearly refers to a sentence imposed for a criminal conviction.
Periods of time spent in ICE detention are not “prison terms.” The ICE detention which the defendant was subjected to has been held by the United States Supreme Court to be “civil, not criminal . . . nonpunitive in purpose and effect.” (Zadvydas v Davis, 533 US 678, 690 [2001]; see also Ogunwomoju v United States, 512 F3d 69 [2d Cir 2008] [a person being held by ICE for deportation by virtue of a state criminal conviction is not eligible to seek habeas corpus relief in the federal courts because such a person is not “in custody” under the federal habeas corpus statute].)
Case law further makes this construction clear. The submissions of the parties and the court’s own research have not revealed any case during the past 37 years which has ever construed the word “incarceration” as used in the statute to mean anything other than confinement under a sentence imposed for the commission of a crime. Moreover, the case law makes clear that certain forms of confinement in a correctional facility do not count as incarceration, even though such confinement is within the literal terms of the statute. In People v Love *600 (71 NY2d 711 [1988]) the Court held that a defendant’s period of imprisonment on a conviction which was subsequently found to have been unconstitutionally obtained could not serve to toll the running of the 10-year period. The Court held that “when the statute says that incarceration ‘for any reason’ extends the limitations period, it contemplates at least that the defendant has not been imprisoned without reason or unconstitutionally.” (71 NY2d at 716.) That holding was extended by the Court of Appeals in People v Dozier (78 NY2d 242 [1991]), where the Court held that a sentence which was based on an invalid conviction, even where that invalidity was not based on a constitutional violation, could also not be used to toll the 10-year period. (See also People v Beard, 143 AD2d 101 [2d Dept 1988] [same].)
There is also a very strong argument, however, in the court’s view, that the word “incarcerated” should be construed to include forms of confinement like defendant’s ICE detention. That argument is based on the purpose of the tolling provision. As noted supra, there is no dispute that the defendant was actually confined and separated from civil society during the time he was held by ICE. The purpose the 10-year requirement is not to impose an increased punishment upon prior felony offenders who “demonstrate their ability to live within the norms of civil society for 10 years.” (Cagle, 7 NY3d at 651.) In Cagle the Court of Appeals held that a defendant who participated in a day-reporting program as a part of his prison sentence was “incarcerated” under the statute. The Court, inter alia, focused on the fact that the defendant continued to be “confined,” albeit under less stringent circumstances during day reporting, that he continued to serve his prison sentence during this period and that day reporting was a privilege which was revocable. A focus on the “plain purpose” of the statute led the court to conclude that time in day reporting was not synonymous with living a law-abiding life in civil society. Cagle illustrates the important principle that the words of a statute must be construed in accordance with the statute’s purpose. This principle should be applied even where a statutory interpretation based on a statute’s purpose is contrary to the literal meaning of some of the statute’s words. (McKinney’s Cons Laws of NY, Book 1, Statutes § 96.)
It is also obvious, however, that being separated from civil society is not necessarily synonymous with being “incarcerated” under the statute. Put another way, there are obviously a vari *601 ety of circumstances in which the 10-year period is not tolled, although doing so would further the statute’s purpose of ensuring that a defendant may only avoid the increased punishment provided by the second felony offender law if he has demonstrated the ability to live at liberty without violating the law for at least 10 years. The period of time during which a person was involuntarily confined in a mental health facility, for example, in the court’s view, would not toll the running of the 10-year period even though a defendant would not be free in society during that time. In fact, any number of circumstances could be imagined where a defendant had been separated from society for a time but that time would not interrupt the running of the 10-year period.
The question here is not whether, as a policy matter, it would make sense to include periods of immigration detention within the tolling rule. The question is whether the statute can be fairly read as covering periods of ICE detention. (See People v Tatta, 196 AD2d 328, 331 [2d Dept 1994], lv denied 83 NY2d 972 [1994] [holding that where a defendant absconds from custody, the period during which he is at large does not count toward the tolling rule].) As the Tatta Court noted, “[a] statute ‘must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise’ ” (id. at 331 [internal quotation marks and citations omitted]).
Over the past 20 years, changes in federal immigration law have subjected significantly more noncitizens to detention and deportation by virtue of criminal convictions. But at the time the 10-year tolling provision at issue here was enacted by the Legislature, the arrest and detention of illegal aliens for deportation was clearly authorized by federal law. (See e.g. Ojeda-Vinales v Immigration & Naturalization Serv., 523 F2d 286 [2d Cir 1975]; Trias-Hernandez v Immigration & Naturalization Serv., 528 F2d 366 [9th Cir 1975].) Indeed, the deportation of noncitizens by virtue of criminal convictions was first authorized by the Immigration and Nationality Act of 1917. (See Padilla v Kentucky, 559 US —, —, 130 S Ct 1473, 1478-1480 [2010] [discussing the history of federal laws providing for the deportation of noncitizens because of criminal convictions].) The Legislature obviously could have provided that periods of immigration detention would toll the running of the 10-year period. But, in the court’s view, the Legislature clearly did not do *602 so. Courts obviously should not legislate in the guise of interpretation. (McKinney’s Cons Laws of NY, Book 1, Statutes § 73.) Holding that “incarceration” under the statute would include detention by immigration authorities for the purpose of deportation, in the court’s view, would constitute an impermissible judicial policy judgment rather than an appropriate interpretation of the statute based on the intent of the Legislature.
The statute’s plain language, surrounding provisions, legislative history and case law interpretations all, in the court’s view, strongly indicate that incarceration should not be construed to include immigration detention such as the defendant was subject to here. For this reason, the court holds that “incarceration” under the statute does not include periods during which an offender is detained by ICE for possible deportation. The defendant, therefore, in this case would appear to be a first felony offender under the relevant provisions of the Penal Law.

. See Black’s Law Dictionary 775 (8th ed) (incarceration is “[t]he act or process of confining someone; IMPRISONMENT”); Websters Third New International Dictionary, Unabridged (1993) (defining “incarceration” as “a confining or state of being confined: IMPRISONMENT”); Webster’s II Dictionary (3d ed 2005) (defining “incarcerate” as “[t]o put in jail” but also as “[t]o confine”).

. This principle of statutory construction is known as noscitur a sociis, • which literally translated means “it is known by its associates.” McKinney’s Statutes describes the principle as “merely a guide to legislative intent and not a fixed rule of construction.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 239.)