OPINION OF THE COURT
John L. DeMarco, J.
The issue is whether the defendant is eligible for the Judicial Diversion Program (JDP) notwithstanding his December 13, 2002 conviction for assault in the second degree,[1] and whether his 2011 sentence to the Willard Drug Treatment Program (Willard) tolls the 10-year period under Criminal Procedure Law § 216.00 (1) (a). Defendant committed the assault in the second degree on March 29, 2002. Defendant allegedly committed the instant offense of burglary in the third degree on or between August 20-21, 2013.
Defendant contends that he is not a predicate violent felony offender under CPL 216.00 (1) (a) and, thus, is eligible for JDP Defendant asserts that his commission of the above assault in the second degree occurred 11 years, four months, and 21 days before commission of the instant offense. Defendant does not dispute that the 421 days he spent in custody between commission of said assault and the instant offense is excludable under CPL 216.00 (1) (a). Defendant argues, however, that his *308 placement at Willard from March 8, 2011 to June 21, 2011 is not excludable, because he was not incarcerated while at Willard. Defendant’s support for this contention is twofold. Firstly, defendant asserts that he was received at Willard as a parolee pursuant to CPL 410.91 (6). Furthermore, says the defendant, under Correction Law § 70 (1) (c), Willard is not a correctional facility. Thus, the defendant concludes, because his time at Willard is not excludable, his previous conviction for assault in the second degree was not within 10 years of commission of the instant offense.
The People disagree. They assert that defendants confined at Willard are not free to come and go as they please and must abide by the rules and regulations of the program. They contend that defendants so situated are under the immediate supervision of the New York State Department of Corrections and Community Supervision (DOCCS) — and incarcerated. Thus, say the People, the duration of defendant’s placement at Willard — from March 8, 2011 to June 21, 2011, totaling 105 days — is excludable under CPL 216.00 (1) (a). They conclude that when the defendant’s time at Willard is added to the 421 days he otherwise spent in jail between commission of the above assault in the second degree to commission of the instant offense, his previous conviction for assault in the second degree was within 10 years of the instant offense, rendering him ineligible for JDE
CPL 216.00 reads, in pertinent part, as follows:
“The following definitions are applicable to this article:
“1. ‘Eligible defendant’ means any person who stands charged in an indictment or a superior court information with . . . any . . . specified offense as defined in subdivision four of section 410.91 of this chapter, provided, however, a defendant is not an ‘eligible defendant’ if he or she:
“(a) within the preceding ten years, excluding any time during which the offender was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony, has previously been convicted of: (i) a violent felony offense as defined in section 70.02 of the penal law.”
Defendant was convicted of grand larceny in the fourth degree on February 18, 2011 and sentenced to an indeterminate term of imprisonment of IV2 to 3 years with placement at Willard. *309 Defendant correctly notes in his letter memorandum that Willard is a drug treatment campus and not a correctional facility (Correction Law §§ 2 [20]; 70 [1] [c]), and that he was a parolee during his placement there (CPL 410.91 [6]). While individuals received at Willard as parolees are “placed under the immediate supervision of the department of corrections” (CPL 410.91 [1]), individuals on parole at Willard, though otherwise restrained of their liberty, are not incarcerated (see People ex rel. Morejon v New York State Bd. of Parole, 183 Misc 2d 435, 438 [Sup Ct, Bronx County 1999] [“an initial placement at Willard does not constitute incarceration (under Correction Law § 70 [1] [c]), but is rather a condition of . . . parole” (emphasis added)]; Ayala v Williams, 7 Misc 3d 1025[A], 2005 NY Slip Op 50733[U] [Sup Ct, Seneca County 2005] [individuals on parole to Willard are not incarcerated]; People ex rel. Davis v Superintendent of Willard Drug Treatment Campus, 11 Misc 3d 1072[A], 2006 NY Slip Op 50529[U] [Sup Ct, Seneca County 2006] [reversing, in part, its former opinion in Ayala and holding that placement at Willard, though not incarceration per se, substantially restrains one’s liberty to merit habeas corpus relief]).
This court does not disagree that defendant’s liberty was substantially restrained during his placement at Willard. Substantial restraint on one’s liberty, however, does not foreclose the discussion. Nor does the Seneca County Supreme Court’s change in position in 2006 regarding the level of restraint on one’s liberty sufficient to merit habeas corpus relief warrant a different conclusion. The above cases concerned inordinate delays in transferring individuals from reception centers to Willard. Within that context, People ex rel. Davis held that “to the extent prior rulings were based solely on the argument that habeas corpus relief is never available to a parolee while in the Willard program, such was error. Habeas corpus relief is not only available to one in prison but also to one otherwise restrained in his liberty” (11 Misc 3d 1072[A], 2006 NY Slip Op 50529[U], *2 [citation and internal quotation marks omitted]). That the reality of the circumstances surrounding a parolee’s placement at Willard may lead inexorably to the conclusion that his liberty is significantly restrained while confined there so as to justify his right to habeas corpus relief does not settle the discussion of whether that individual is incarcerated to toll the 10-year period under CPL 216.00 (1) (a). *310 Moreover, as observed above in People ex rel. Davis, the legislature explicitly differentiates individuals in prison from those “otherwise restrained in [their] liberty” (see e.g. CPLR 7002 [a]). Whatever the nuances, at the end of the day, in this court’s view, individuals serving time in prison are incarcerated; individuals sentenced to parole supervision with placement at a drug treatment facility are not.
In light of these considerations, the People’s application of People v Cagle (7 NY3d 647 [2006]) in support of their contention that the defendant was incarcerated during his time at Willard is persuasive but misplaced. That is, as alluded to above, confinement, alone, is not dispositive of whether one is incarcerated. Granted, individuals on parole to Willard are, like those incarcerated in state correctional facilities, confined and under the immediate control and direct supervision of DOCCS. But, parolees at Willard, unlike their state prison counterparts, are not sentenced to a term of incarceration, awaiting the possibility of parole; they are sentenced directly to parole supervision. This court certainly appreciates that the Court of Appeals in Cagle held that confinement with restrictions under the custody and control of DOCCS means “incarcerated” (7 NY3d at 650). Notably, however, Cagle was decided in the context of an otherwise incarcerated defendant out on work release to a day-reporting program and who, unlike the defendant here, was not sentenced to a term of parole supervision at Willard. Furthermore, the Cagle Court distinguished day-reporting programs from parole supervision, observing that individuals in day-reporting programs are “inmates” who remain in the custody of DOCCS while in the program {id.). The defendant here was not an “inmate” while confined at Willard, but rather a parolee. Defendant Cagle, on the other hand, notwithstanding his work release status, was an inmate out on work release, not a parolee. Such factors distinguish defendant Cagle from individuals on parole (see 7 NY3d at 650-651, 650 n 2). To drive this point home, the Cagle Court concludes that a “defendant should be considered incarcerated until he complete [s] his sentence of imprisonment for the prior crime and [is] released into parole” (id. at 651). To be certain, this court recognizes that defendant here was sentenced, not released, to parole, and that the Cagle Court distinguished incarcerated prisoners from parolees in the latter context. However, this court finds that distinction not dispositive. The dispositive question here, which was not addressed in Cagle, is whether defendant’s placement at Willard *311 constituted incarceration, and, for the above reasons, this court concludes it did not (Correction Law §§ 2 [20]; 70 [1] [c]; People ex rel. Morejon, 183 Misc 2d at 438). Thus, under the circumstances, Cagle is distinguishable, and, as such, not controlling.
The thrust of this opinion bears on the fact that confinement is a necessary though not sufficient condition of incarceration — as here, where defendant was sentenced to parole supervision and concomitant confinement at a drug treatment campus, as opposed to a term of incarceration at a state correctional facility. Whereas, it may go without saying that incarceration necessarily entails confinement. In either event, whether sentenced to parole supervision at Willard or to a term of incarceration, the offender is under the immediate supervision of DOCCS. But those sentenced to Willard under CPL 410.91 (1), as explained herein, are not incarcerated as that term is regularly understood under New York law, and thus, for purposes of this analysis, under CPL 216.00 (1) (a).
Nor, as a matter of public policy, is the purpose of the statute ill served by way of the above interpretation of the term incarceration. CPL article 216 was enacted, in essence, to give eligible defendants an opportunity to earn their way to a more favorable disposition if they successfully complete a comprehensive substance abuse treatment program specifically designed to promote their recovery. The defendant has applied to this court for acceptance into the program due to an alleged serious drug addiction to opiates and heroin. Presumably, the same, or a similarly serious, drug addiction warranted the defendant’s past sentence to parole supervision at Willard. Bearing this in mind, even if the statute is designed to afford its inherent benefits to only those who have demonstrated their ability to follow the law and live within the norms of civil society free from incarceration for 10 years (cf. Cagle, 7 NY3d at 651), construing the words of article 216 in accordance with its salutary purpose, it would be a pathetic irony, indeed, if the legislature intended for an individual’s placement at Willard — a drug treatment campus — to constitute incarceration which militates against eligibility for JDP, a program designed to benefit individuals with serious drug addictions like the defendant.
For all the above reasons, the court finds that the defendant was not incarcerated during his 2011 placement at Willard. Be that as it may, defendant is ineligible for JDP Counsels’ *312 letter memoranda delineated the issue presented, primarily, as whether confinement at Willard constitutes incarceration. Neither counsel explicitly addressed, as a threshold matter, whether defendant is eligible irrespective of the duration of his confinement at Willard. Upon information and belief, the defendant pleaded guilty to assault in the second degree on December 13, 2002 and was sentenced on February 28, 2003. Under CPL 216.00 (1) (a), the defendant is ineligible if within 10 years preceding the instant offense, excluding any time spent incarcerated for any reason between commission of the prior felony and commission of the instant felony, he has been convicted of a violent felony offense[2] (see CPL 216.00 [1] [a]). Here, irrespective of whether the 10-year time frame is measured from the date defendant pleaded guilty to assault in the second degree or the date on which he was sentenced for that offense, he is ineligible for JDP[3] The applicable 10-year time frame, whether it runs from December 12, 2002 or February 28, 2003, must be extended by 421 days (one year and 56 days) — the total time defendant was incarcerated between commission of the prior felony assault on March 29, 2002 and commission of the instant offense on or between August 20-21, 2013. December 13, 2002 plus 10 years and 421 days extends to approximately February 9, 2014. Thus, defendant’s previous conviction for assault in the second degree — notwithstanding the above finding that his placement at Willard did not constitute incarceration — was within 10 years *313 of his commission of the instant offense, rendering him ineligible for JDE

. The court notes that counsels’ letter memoranda indicate that defendant was convicted of assault in the second degree on February 28, 2003. This discrepancy is of no consequence for the reasons set forth herein (see infra at 312 n 2).

. The CPL explicitly distinguishes the terms “conviction” and “sentence,” defining the former to include entry of a plea of guilty or a verdict of guilty, and the latter as the imposition of sentence upon a conviction (see CPL 1.20 [13], [14]). The CPL also defines “judgment” as being comprised of a conviction and the sentence imposed on the conviction (see CPL 1.20 [15]). CPL 216.00 uses the term “convicted.” Thus, in strictly construing the statute, the court finds that December 13, 2002, the date defendant pleaded guilty to assault in the second degree, is the proper date from which to start measuring the 10-year range applicable in this case (compare CPL 216.00 [1] [a] with Penal Law § 70.04 [1] [b] [iv] [under the latter, in determining whether a prior conviction is a predicate violent felony, the 10-year range is measured from the date of sentence on the previous felony]). Notably, counsels’ letter memoranda state that the defendant was convicted of assault in the second degree on February 28, 2003. In either event, for the reasons set forth in this opinion, the defendant would still be ineligible for JDI] as a conviction date of February 28, 2003 obviously only shortens his eligibility window.

. In the defendant’s letter memorandum, it appears that he measures the 10-year time frame from the date he committed the assault in the second degree (Mar. 29, 2002), rather than from the conviction date. This misapplication of the statute resulted in the defendant erroneously concluding that he is outside the violent predicate felony range as of May 26, 2013; March 29, 2002 plus 10 years and 421 days extends to approximately March 25, 2013.