People v Hernandez (2025 NY Slip Op 00904)

People v Hernandez

2025 NY Slip Op 00904

Decided on February 18, 2025

Court of Appeals

Garcia

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 18, 2025

No. 9 

[*1]The People & c., Respondent,
v
Mitchell Hernandez, Appellant.

Amit Jain, for appellant.
Steven C. Wu, for respondent.
Barbara D. Underwood, for Hon. Letitia James, New York State Attorney General, in her statutory capacity pursuant to Executive Law § 71.
The Bronx Defenders et al.; Ethan J. Leib; Prisoners' Legal Services of New York et al., District Attorneys Association of the State of New York, amici curiae.

GARCIA, J.

A person convicted of a violent felony offense is a "persistent violent felony offender" for sentencing purposes if that person has "two or more predicate violent felony convictions" (Penal Law § 70.08 [1] [a], [b]). Those potentially qualifying felony convictions must satisfy the timing requirement set forth in Penal Law § 70.04, namely that the sentence on the prior crime must have been imposed not more than ten years before the commission of the current felony (Penal Law § 70.04 [1] [b] [iv]). This ten-year lookback period is extended by any period of incarceration between commission of the prior felony and commission of the current felony (Penal Law § 70.04 [1] [b] [v]). Defendant challenges any extension of the ten-year lookback period using time he spent in presentence incarceration on his earliest qualifying felony conviction. We now hold that pursuant to Penal Law § 70.04, defendant's presentence incarceration time did extend the ten-year period and therefore defendant was properly sentenced as a persistent violent felony offender.
In 2015, defendant robbed a Manhattan convenience store at gunpoint and assaulted the proprietor. A jury convicted him of that robbery in 2017. Prior to sentencing, the People filed a predicate felony statement (see CPL 400.16) listing two prior violent felony convictions, the dates of conviction and sentence on those crimes, and detailing the relevant dates of incarceration that extended the ten-year period described in Penal Law § 70.04 (1) (b) [*2](iv). For a first qualifying felony, the People asserted that defendant was convicted of first-degree robbery and first-degree burglary in April 1997 and was sentenced for those crimes in May 1997. According to the People, that conviction resulted from a home invasion where defendant forced his way into a Bronx apartment occupied by a woman and her two children and robbed and sexually assaulted the woman. The second qualifying felony was a May 1990 second-degree robbery conviction that stemmed from the robbery and assault of passengers on a New York City subway. Defendant was arrested for that crime in April of 1990, pleaded guilty the following month, and was then incarcerated beginning in January 1991, prior to his October 1991 sentencing [FN1]. According to the People's calculations, defendant was incarcerated for nearly 14 years (5049 days) during the relevant period (see Penal Law § 70. 04 [1] [b] [v]).
When given the opportunity to controvert the People's statement at his sentencing hearing (see CPL 400.15), defendant did not challenge the People's account of his prior convictions or the amount of time spent incarcerated for each crime. Rather, he made a purely legal argument, namely the one he presses here, that under the terms of Penal Law § 70.04, the time he served in presentence incarceration for the 1990 felony should not be excluded from the ten-year lookback period. The parties agreed that if the period of presentence incarceration did not factor into the calculation for determining persistent offender status, the sentence on the 1990 offense would be outside of the ten-year limitations period and the conviction could not serve as a predicate for a persistent violent felony offender sentence. Supreme Court held instead that under the plain language of the statute, the period of presentence incarceration must be excluded, and the relevant lookback period tolled, and sentenced defendant as a persistent violent felony offender pursuant to Penal Law § 70.08. After noting that defendant had "a long history of violence" and stood convicted of "a particularly violent crime," the court imposed the minimum available sentence of 20 years to life in prison. The Appellate Division affirmed, agreeing that the period of presentence incarceration on the 1990 conviction tolled the ten-year lookback period (213 AD3d 425, 426 [1st Dept 2023]). A Judge of this Court granted leave to appeal and we now affirm.
Repeat offender statutes are intended "to deter recidivism by enhancing the punishments of those who, having been convicted of felonies, violate the norms of civil society and commit felonies again" (People v Walker, 81 NY2d 661, 665 [1993]). We are asked to interpret one of the statutes enacted by the legislature to accomplish that public safety goal, Penal Law § 70.04, which establishes the ten-year look back period and the method for extending that period. "Where a statute is plain on its face, we need only apply it in accordance with its meaning" (id. at 666; see People v Talluto, 39 NY3d 306, 310-311 [2022]). The text at issue here is plain and the meaning clear.
For a prior violent felony conviction to qualify as a predicate, "[e]xcept as provided in subparagraph (v) of this paragraph, sentence must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted" (Penal Law § 70.04 [1] [b] [iv]). The "[e]xcept as provided" language expressly requires that the ten-year period be determined as set out in the subsequent subparagraph, which explains that:
"In calculating the ten year period under subparagraph (iv), any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served under such incarceration" (Penal Law § 70.04 [1] [b] [v]).
The plain text of this subparagraph unambiguously requires that the ten-year lookback period be extended by any period of incarceration "between the time of commission of the previous felony and the time of commission of the present felony," including any period of presentence incarceration for the prior crime (id.). That is, the first part of the phrase mandates that such time "shall be excluded" and the second clause requires that the ten-year period "be extended" by that period of incarceration (id.). Unsurprisingly, each department of the Appellate Division to consider the issue has concluded that section 70.04 means what it says (see People v Holman, 53 AD3d 775, 776 [3d Dept [*3]2008]; People v McEachern, 275 AD2d 330, 331 [2d Dept 2000]; People v Cortez, 231 AD2d 450, 451 [1st Dept 1996]).
Other statutes demonstrate that the legislature chooses this same formula when warranted (see CPL 500.10 [21] [providing a five-year lookback period to determine whether an individual qualifies for electronic monitoring and excluding periods of incarceration between the time of commission of the previous crime and commission of the present crime]; Penal Law § 240.75 [1] [providing a five-year lookback to determine whether an individual is guilty of an aggravated family offense and excluding periods of incarceration between the time of commission of the previous crime and commission of the present crime]), and when it intends a different result, it makes that clear (see CPL 160.59 [5] [providing a ten-year lookback for sealing criminal records from "imposition of the sentence" but with tolling for incarceration "after . . . conviction" of the previous crime rather than the date of its commission])[FN2]. We cannot avoid the deliberate legislative choice made here by accepting defendant's invitation to rewrite the statute's reference to "commission of the previous felony" (Penal Law § 70.04 [1] [b] [v]) to read "sentence imposed" for that crime (see People v Boston, 75 NY2d 585, 589 [1990]). There is no ambiguity in the text requiring resort to legislative history or interpretive aids for statutory construction (see Matter of Walsh v New York State Comptroller, 34 NY3d 520, 524 [2019]). Nor may we manufacture an ambiguity in the service of a preferred policy goal (see dissenting op at 4-12).
Defendant's argument that the United States Supreme Court's holding in Erlinger v United States (602 US 821 [2024]) renders unconstitutional the recidivist sentencing regime is unpreserved. As a threshold matter, defendant did not contest his criminal history, including the relevant periods of incarceration, and therefore we need not consider whether, had he done so, preservation would otherwise be required (see People v Cabrera, 41 NY3d 35 [2023]).
Accordingly, the order of the Appellate Division insofar as appealed from should be affirmed.

RIVERA, J. (dissenting):

The legislature enacted Penal Law § 70.04 to enhance the sentences of persistent violent felony offenders—defendants who commit a violent felony within ten years of being sentenced on more than one violent felony. The statute plainly defines this look-back period as the time between the date of sentencing on the prior violent felony and the date of commission of the current violent felony. The statute includes a narrow exception to this fixed time, which extends the ten years by any time spent incarcerated during that period. Thus, the look-back period may expire later than ten years from sentencing, after the mandatory tolling of intermittent periods of incarceration, if any.
The majority fails to interpret the statute holistically, fixating on the wording of the tolling exception, which uses the commission of the crime, rather than the date of sentencing, to set the measurement of the tolling period. But the majority ignores that the tolling period is not a freestanding measurement: it can be applied only to the time within the ten-year period—not to time in the abstract.
The purpose of the statute is to punish more severely the recidivist who fails to live in the community for at least ten years without reincarceration. This mathematical calculation achieves that purpose by tolling the ten-year look-back period for every day the defendant is incarcerated during the ten-year look-back period. The majority veers from the commonly understood mechanics of tolling and interprets the statute to require the tolling when a defendant is incarcerated before conviction and sentencing on the prior felony. That approach illogically counts days outside of the ten-year look-back period. To achieve that end, the majority employs a reading of the statute which is contrary to the text, our enhanced sentencing precedent, statutory intent, and established rules of construction, including the rule of lenity. Moreover, the majority's calculation method leads to absurd and unjust results with constitutional implications. I dissent and would reverse, vacate the persistent violent felony offender sentence, and remand for resentencing as a second violent felony offender (Penal Law § 70.04).[FN3]
I.
On this appeal, defendant claims that he was wrongly classified as a persistent violent felony offender at his sentencing for a robbery he committed in 2015. As a result of this classification, he was sentenced to three concurrent mandatory imprisonment terms of 20 years to life. Absent this classification, defendant would be subject to a lengthy prison term, but not the harsh punishment reserved for a subclass of recidivists. He would not be eligible for a life sentence. As the sentencing court observed, "were the Defendant not a persistent violent felon, a sentence close to 20 years would be appropriate."
Defendant argues that he does not fit the definition of a persistent violent felony offender, which requires prior convictions on two violent felonies within ten years, because the 1991 sentence was imposed more than ten years prior to the commission of the 2015 offense, taking into account periods of incarceration between that sentence and the robbery. According to defendant, the legislature intended to enhance sentences of people who could not live a law-abiding life while at liberty for a total of at least ten years following sentencing on a violent felony. Defendant also claims that tolling of time spent incarcerated
before actual sentencing on the prior felony would impose a longer look-back period on people who cannot afford bail, thereby imposing harsher sentences based on ability to pay, with unconstitutional and unjust results.
The prosecution responds that the statute clearly states that all periods of incarceration from the commission of the prior felony, rather than from the sentencing date for that crime, are tolled during the ten-year period. In an attempt to rationalize a calculation which leads to obvious inequality of application, the prosecution asserts that their methodology ensures that defendants with the same dates of commission and sentencing for a prior felony must wait the same total period of time to be free from a potential enhanced sentence. But no such intended outcome can be gleaned from the text or the legislative purpose.
[*4]II.
A.
Our purpose, as in all cases of statutory interpretation, is "to ascertain and give effect to the legislature's intent" (People v Schneider, 37 NY3d 187, 196 [2021]). "[A]ll parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof" (People v Pabon, 28 NY3d 147, 152 [2016], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]). Thus, "a statute should be construed to avoid rendering any of its provisions superfluous" (Kimmel v State, 29 NY3d 386, 393 [2017], citing Majewski v Broadalbin—Perth Cent. School Dist., 91 NY2d 577, 587 [1998]). Further, "if the statute is ambiguous and two constructions can be given, the one must be adopted which will not cause objectionable results or cause inconvenience, hardship, injustice, or mischief, or lead to absurdity" (People v Ryan, 274 NY 149, 152 [1937]; Lubonty v U.S. Bank Natl. Assn., 34 NY3d 250, 255 [2019] ["In a manner consistent with the text, we may look to the purpose of the enactment and the objectives of the Legislature. We must also interpret a statute so as to avoid an unreasonable or absurd application of the law"] [internal quotation and citations omitted]).
B.
In 1978, the legislature enacted laws that mandate enhanced sentences for people who commit multiple felonies, including especially harsh penalties for those who commit two or more violent felonies within a certain period of time (see Penal Law § 70.04 [second violent felony offender]; Penal Law § 70.06 [second felony offender]; Penal Law § 70.08 [persistent violent felony offender]; Penal Law § 70.10 [persistent felony offender]). The laws expressly define what constitutes a predicate felony for enhanced punishment.
At issue here is Penal Law § 70.04 (1) (b). Under that provision, a conviction on a prior violent felony may serve as a predicate for enhanced sentencing unless it is too stale. The relevant language states that:
"(iv) Except as provided in subparagraph (v) of this paragraph, sentence must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted;
"(v) In calculating the ten year period under subparagraph (iv), any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served under such incarceration"
(id.).
As the text makes clear, subparagraph (iv) sets a fixed starting point (the date of sentencing for the prior felony), a fixed end point (the date on which the current felony was committed), and the length of time that must expire between those points (ten years). Outside these limits, the prior felony is too old to trigger an enhanced sentence. Subparagraph (v) sets forth a narrow exception to this fixed ten-year period, requiring that the court "exclude" certain periods of incarceration from the subparagraph (iv) period and "extend" the period accordingly.
As the text illustrates, and as CPL 400.14 (2) states explicitly, subparagraph (v) operates to toll "the ten-year limitation set forth in subparagraph (iv) of 70.04 (1) (b)." This Court has repeatedly described subparagraph (v) in exactly this way, as it has with respect to other identically-worded statutes (see e.g. People v Meckwood, 20 NY3d 69, 71 [2012]; People v Thompson, 26 NY3d 678, 686 [2016]; People v Kaval, 39 NY3d 1081, 1082 [2022]; People v Thomas, 33 NY3d 1, 5 n.3 [2019]; People v Ross, 7 NY3d 905, 906 [2006]; People v Cagle, 7 NY3d 647, 651 [2006]; People v Love, 71 NY2d 711, 714 [1988]).
The legislative word choice further confirms that subparagraph (v) tolls the ten-year period as defined in subparagraph (iv). The terms of art adopted in subparagraph (v) are commonly used to denote tolling of a statutorily [*5]defined period. "Exclude" is ordinarily defined as, "to bar from participation, consideration, or inclusion; to expel or bar especially from a place or position previously occupied" (Exclude, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/exclude [last viewed Jan. 23, 2025]). And "extend" means "to cause to be longer" (Extend, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/extend [last viewed Jan. 23, 2025]). Black's Law Dictionary defines "toll" to be "(of a time period, esp. a statutory one) to stop the running of; to abate
" (Toll, Black's Law Dictionary [11th ed. 2019]). The word "exclude" is commonly used in tolling provisions to direct that certain periods be "subtracted" from a limitations or look-back period. In turn, the word "extend" is often used when the intent is to lengthen the period by the time subtracted. And tolling provisions refer to "extend(ing)" limitation periods under other statutes (see, e.g., B.F. v Reproductive Med. Assocs. of N.Y., LLP, 30 NY3d 608, 613 [2017] [describing the "toll" as "extend(ing)" a limitation period]; Portfolio Recovery Assocs., LLC v King, 14 NY3d 410, 417 [2010] ["Delaware's tolling provision does not extend the three-year statute of limitations"]; Berkshire Life Ins. Co. v Fernandez, 71 NY2d 874, 876 [1988] [declining to discuss "whether the various tolling provisions" were applicable to "toll[ ] or extend[ ]" the statutory period]). Given the use of those terms in subparagraph (v), we must presume they carry the same meaning and import here as they do in other tolling provisions (see McKinney's Cons Laws of NY, Book 1, Statutes § 236 ("[W]here the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute"). By definition and common application, only the time that falls within the temporal boundaries of the look-back period can toll those ten years.
The majority rejects this interpretation, relying on subparagraph (v), which states that the look-back period should be extended by any time the defendant spent incarcerated after the commission of the prior felony, not after sentencing. That language differs from the language the legislature used in subparagraph (iv), which provides that the look-back period should be calculated from the time of sentencing. As the practice commentaries note, "the statutes setting forth what qualifies as an excludable period of incarceration seem logically deficient" (William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Penal Law § 60.00). The majority's error is that it reads subparagraph (v) in a vacuum and concludes that defendant's interpretation of the statute—which would exclude only time after the limitations period begins to run—would render subparagraph (v)'s reference to the "commission" of the prior felony meaningless. The majority interprets subparagraph (v) to require subtraction of time in detention after commission of the prior felony but before sentencing on that crime. That interpretation is inconsistent with the legislature's use of the term "excluded." To be "excluded," time must have been "included" to begin with. But time that passed before sentencing is never included in the look-back period. The majority would reach back before sentencing, take any period of incarceration between commission and sentencing, and add that time to the look-back period. But that would not be "excluding" time. That would be adding it. The only reasonable interpretation of the statute is that the periods to be excluded and then used to extend the look-back period are those that fall within the ten years.
The Court has explained precisely the interplay between these two subparagraphs in the broader context of the enhanced sentencing framework: "Penal Law 70.04 (1) (b) (iv) and (v) prohibits enhanced sentencing where more than 10 years have passed between sentencing for the prior felony and commission of the present felony, excluding all periods of incarceration during such time period" (Meckwood, 20 NY3d at 73). Subparagraph (v) therefore sets out the terms for when to stop the ten-year time period—like a stopwatch that can pause and restart—based on events occurring within those ten years, and then add the excluded time at the tail end to add up to ten years. That calculation ensures that a defendant only gets credit for time when they are at liberty.
That interpretation also achieves the legislative purpose. As the Court has repeatedly recognized, "enhanced sentencing statutes punish a defendant 'more for the second felony . . . because recidivism evidences a lack of rehabilitation and a greater danger to society' []. Section 70.04 [] furthers that legitimate interest . . . Indeed, it is rational to omit periods of incarceration from the look-back period because society has an interest in treating differently individuals who demonstrate good behavior during the time in which they are released and living in society from those who cannot" (Meckwood, 20 NY3d at 73-74 [emphasis added]; Thomas, 33 NY3d at 11 ["the ameliorative purpose of the look-back period . . . requires only that 'prior felons . . . demonstrate their ability to live within the norms of civil society for 10 years"] [emphasis added]; Cagle, 7 NY3d at 651 ["To avoid enhanced punishment, prior felons must demonstrate their ability to live within the norms of civil society for 10 years"]; People [*6]v Bell, 73 NY2d 153, 165 [1989], modifying on dissenting op. of Sullivan, J., 138 AD2d 298, 300 [1st Dept 1988] [Sullivan, J., dissenting] ["(T)he second felony offender statute . . . was not intended to punish an individual for his past conduct, but, rather, to enhance the sentences applicable to a predicate felon who fails to demonstrate that he can function in society in a law-abiding manner for a ten-year period. . . . Hence, the time of eligibility for release from the statute's application is measured, not from the date of the commission of the crime, but from the date of the sentence"]). Penal Law § 70.04 was enacted in 1978, and its relevant language, including all of the language at issue in subparagraphs (iv) and (v) was copied verbatim from Penal Law § 70.06, which was enacted five years prior. And Governor Rockefeller explained in his 1973 approval memorandum that for a prior conviction to qualify as a predicate under Penal Law § 70.06, "[t]he alleged second felony offense must occur within 10 years after the defendant was released from a prison term on the first felony" (Governor's Approval Mem, L 1973, ch 277, 1973 NY Legis Ann at 427 [emphasis added]).
B.
The majority's interpretation fails to properly apply these rules of construction and as a consequence reads the statute counterintuitively. First, the majority fails to consider that we interpret statutory language in context—here within the enhanced sentencing framework, and that we do so to achieve the legislative purpose. That context makes plain that subparagraph (iv) and (v) work in tandem to impose a fixed ten-year look-back period, with defined commencement and end dates, which must be extended every day that a defendant is incarcerated during that same period. This is wholly rational because during the time that a defendant is incarcerated it is impossible for the defendant to demonstrate their ability to live a law-abiding life in the community. The majority ignores the simple fact that the legislature has determined that the period of incarceration that matters is the time during the look-back period when defendant is free to make a choice to comply with the law or commit another qualifying felony (Meckwood, 20 NY3d at 73-74). The defendant who complies avoids future enhanced sentencing while the defendant who cannot is subject to punishment as a recidivist. Of course, during pretrial detention, a person charged with a crime is not incarcerated pursuant to a valid conviction but instead stands innocent before the law and so the defendant cannot exercise the choice posited by the Legislature as they are not at liberty, and they have not been convicted of a prior felony.
Second, the majority violates the rule against superfluity because its interpretation renders the word "exclude" unnecessary. By definition, pretrial detainment occurs before sentencing and accordingly falls outside the ten-year look-back period. Such detainment cannot be excluded from a wholly separate period of which it is not a part. Further, if, as the majority concludes, pretrial detainment is added to the back end of the ten-year period, the same would be achieved solely by the word "extended." By way of illustration, if we remove the word "exclude," subparagraph (v) would read as follows: "In calculating the ten year period under subparagraph (iv), any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony . . . such ten year period shall be extended by a period or periods equal to the time served under such incarceration." That version accomplishes exactly what the majority claims the current subparagraph (v) does (majority op at 5). Hence, the majority's interpretation renders "exclude" superfluous, in contravention of our interpretive rules (Majewski, 91 NY2d at 587; Pabon, 28 NY3d 147, 152 [2016], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]).
Third, the majority ignores the potential unjust consequences of its decontextualized reading of subparagraph (v). This Court has rejected strict readings of Penal Law § 70.04 (1) (b) that produce bizarre and unreasonable results because "statutes should be construed to avoid results which are absurd, unreasonable or mischievous or produce consequences that work a hardship or an injustice" (People v Dozier, 78 NY2d 242, 250 [1991]). As discussed below (infra section C), if pretrial detention is part of the period excluded under (v), then people who cannot afford bail may be punished more severely than those who can. It is a first principle of our criminal law that defendants are treated fairly regardless of their economic status or financial resources. Money should not be able to buy a lighter sentence.
C.
At a minimum, our competing interpretations of section 70.04 (1) (b) suggest an ambiguity in the interplay between subparagraphs (iv) and (v). On the one hand, as I explain, subparagraph (iv) can be read to set beginning and end dates of the ten-year look-back period, with subparagraph (v) by extending those ten years by any time in that range that defendant was incarcerated. On the other hand, the majority reads subparagraph (v) as calculating the time [*7]period in isolation from the defined temporal parameters set out in subparagraph (iv). Even if the majority interpretation is a viable reading of the statute, my interpretation is no less plausible. Where the statutory language is ambiguous, we must consider its legislative purpose. Here, the majority's interpretation does not further the legislative purpose. Instead, it ignores the nuance in the statutory scheme and merely adds up numbers without taking into account what those numbers reflect—incarceration after a conviction versus pre-trial detention when, under the law, a defendant is still innocent until proven guilty. The aggregated calculation also fails to account for the fact that the time between a commission of a crime and sentencing may be delayed for significant periods unrelated to defendant's actions or the severity of the crime committed. Those reasons include backlogs in criminal courts, the Department of Corrections' failure to produce a defendant for a court hearing, time spent while the prosecution assembles and discloses pre-trial discovery materials, or an adjournment to accommodate a sick attorney. These are all circumstances that can result in significant delays through no fault of the defendant (see Katz, 1 in 4 People Jailed in NYC Are Not Being Brought to Court on Time, Gothamist, Feb. 20, 2023). Yet, pretrial detainees would be charged for delays caused by others or delays endemic to the criminal law system. The legislature surely could not have intended to penalize defendants with a harsh enhanced sentence for the failings of others.
The majority's reading of the statute also disadvantages detained defendants whose sentencing is delayed because they choose to go to trial. Imagine defendants A and B commit a robbery on January 2, 2000. Both defendants are incarcerated pretrial. Defendant A pleads guilty and is sentenced on January 2, 2001. Defendant B is not sentenced until January 2, 2002. Perhaps the delay, including delay attributable to the court or prosecution, is because defendant B chose to go to trial. Defendants A and B are both sentenced to ten years. Because they were both incarcerated before trial, they are both released on January 2, 2010. Both defendants commit another robbery on January 3, 2021, eleven years and a day after their release. For defendant A, who was sentenced first, the first robbery is not a predicate because they only had to spend ten years plus one at liberty (the statutory ten years, plus the one year of pre-sentence incarceration). For defendant B, who went to trial, the first felony is a predicate because they had to spend ten years plus two at liberty (the statutory ten years, plus two years of pre-sentence incarceration). In other words, two defendants who commit crimes on the exact same dates are treated differently solely because defendant B was incarcerated longer in pre-trial detention because they chose to go to trial rather than taking a plea. Under such circumstances, Penal Law § 70.04 would operate as a statutory burden on the right to a jury trial. This disparity thus raises fairness concerns and concerns of a constitutional nature. And of course, a statute "should be construed in such a manner as to uphold its constitutionality" (Matter of Town of Southampton v N.Y. State Dept. of Envt. Conservation, 39 NY3d 201, 211 [2023]). We therefore must interpret this provision to avoid an interpretation that "raise[s] . . . serious question[s]" as to the statute's constitutionality (Matter of Lower Manhattan Loft Tenants v. N.Y.C. Loft Bd., 66 NY2d 298, 306 [1985]), or one that "might precipitate embarrassing constitutional questions" (Matter of Jacob, 86 NY2d 651, 668 n 5 [1995]).
III.
There is another reason defendant's sentence should not have been enhanced from a determinate sentence of up to 25 years to an indeterminate life sentence. In the case of an ambiguity that cannot be resolved by application of the usual interpretative devices, the rule of lenity applies. As the Supreme Court has explained:
"the rule of lenity[] teach[es] that ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor. That rule is 'perhaps not much less old than' the task of statutory 'construction itself.' United States v Wiltberger, 18 US [5 Wheat.] 76, 95, 5 L.Ed. 37 [1820] [Marshall, C.J.]. And much like the vagueness doctrine, it is founded on 'the tenderness of the law for the rights of individuals' to fair notice of the law 'and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department'"
(United States v Davis, 588 US 445, 464 [2019] [some internal citations omitted]). "At worst (or best, depending on one's perspective) this is an instance in which two constructions of [Penal Law provisions] are plausible, and to that end 'the one more favorable to the defendant should be adopted in accordance with the rule of lenity' " (Thompson, 26 NY3d at 687—688, quoting People v Golb, 23 NY3d 455, 468 [2014] [internal quotation marks omitted]).
IV.
The difference in outcomes based on these methodologies is real and best illustrated with a simple hypothetical. Defendants A and B commit a violent felony on January 2, 2000 for which they are eventually sentenced to two years' incarceration. Defendant A cannot afford bail and is held in pretrial detention until A takes a plea two years later. Defendant A is sentenced on January 2, 2002. Defendant A is immediately released upon sentencing, having served the two years pre-conviction. Defendant B pays the bail and is at liberty until B takes a plea two years later, where they are also sentenced on January 2, 2002. After sentencing, defendant B serves two years in prison, from which they are released in 2004. Both defendants commit another violent felony on January 2, 2013.
Applying the statutory look-back ten-year period as I have discussed, and tolling that period to ensure a total, albeit intermittent, ten years at liberty, would not subject defendant A to enhanced sentencing but would result in an enhanced sentence on defendant B. In A's case, we reach back from January 2, 2013 ten years to January 2, 2003 and do not toll that period because defendant was at liberty the entire time and the ten years ran without interruption. Under this calculation, the 2000 crime is not a predicate felony within the meaning of Penal Law § 70.04 (1) because the date that defendant A was convicted and sentenced for that crime—2002—was eleven years before commission of the 2013 felony. This methodology conforms with the legislative goal to measure a defendant's conduct during a total of ten years at liberty and subject them to a lengthier sentence if they cannot live in the community for at least a full ten years without committing another qualifying felony.
In defendant B's case the statutory toll applies and we must extend the ten years another two years—to 2015—to reflect that during this look-back period—between January 2, 2002 and January 2, 2004—defendant B was incarcerated while serving his sentence on the prior felony. Under this calculation, defendant B is subject to enhanced sentencing because the 2013 crime is committed within the now recalibrated look-back period (i.e. before 2015). Again, the legislative goal is achieved; defendant B has demonstrated that they cannot be at liberty for at least ten years without reincarceration.
As the hypothetical makes clear, these defendants are treated the same. Both must live ten years in the community without reincarceration to avoid an enhanced (lengthier) sentence than if they had. This application of the statutory language ensures that a defendant's finances do not impact their sentence—defendant A is not disadvantaged because they could afford bail. Instead, both defendants are on equal footing and measured by the same yardstick during the same period.
Under the interpretation of the statute adopted by the majority, both defendant A and B would be subject to enhanced sentencing because the January 2000 crime constitutes a qualifying predicate felony. Applying the prosecution's methodology, we start with the ten-year period and add any period of incarceration, including the pre-trial detention for defendant A, which results in a total 12 year waiting period before a defendant is no longer subject to sentencing enhancement. For both defendants A and B, that date is January 2, 2014—12 years after commission of the 2000 felony. As applied to each of these hypothetical defendants, that calculation leads to perverse outcomes.
In defendant A's case, the 2014 date would trigger enhanced sentencing even though defendant A committed the 2013 felony 11 years after being at liberty without committing a qualifying felony. In contrast, defendant B was at liberty only nine years before committing the same felony. There is no question that both defendants should be held accountable for their current 2013 crime, but the legislature has designated a look-back period that excludes prior felonies more than a decade out. The prosecution would treat both defendants the same, even though A committed the 2013 felony more than a decade prior while defendant B spent less than ten years at liberty in the community before committing the same felony. However, the statute accounts for the difference in how these two defendants behaved during the only period that matters—while at liberty between when they were convicted and sentenced on the prior felony and when they committed another qualifying felony. Defendants A and B are not similarly situated. Rather than account for the fact that defendant A did not commit another qualifying felony in over a decade, the prosecution would treat A as having done so simply because defendant A lacked the financial resources to make bail. That interpretation of the enhanced sentencing framework is unfair and raises serious constitutional concerns.
[*8]V.
For the reasons I have discussed, Penal Law § 70.04 (1) (b) (iv) and (v) work in tandem to set a defined, fixed ten-year look-back period which can be modified only by extending it by the number of days that a defendant is incarcerated during that same period. This furthers the legislative goal of limiting the harsh penalties of enhanced sentencing to those defendants who cannot demonstrate the ability to live in the community without reincarceration during the ten years between the sentencing date of the prior felony and the commission of the current felony. The majority concludes otherwise—in disregard of our precedent, interpretive rules and statutory purpose. It is now for the legislature to confirm if this was the intended resolution of the "logically deficient" statute (William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Penal Law § 60.00).
Order insofar as appealed from affirmed. Opinion by Judge Garcia. Judges Singas, Cannataro, Troutman and Genovesi concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson concurs. Judge Halligan took no part.
Decided February 18, 2025

Footnotes

Footnote 1: Defendant was sentenced to 18 to 54 months in prison on the 1990 robbery conviction. The record does not definitively establish that defendant was given credit against his sentence for the approximately 9 months he had already been incarcerated prior to sentencing, but Penal Law § 70.30 (3) requires such credit. That time of presentence incarceration is the period at issue here.

Footnote 2: Even under this formula—using "conviction on" instead of "commission of" the prior offense as the determinative event—defendant's presentence detention would nevertheless still extend the relevant ten-year period as he was not incarcerated until more than six months after he pled guilty to the 1990 robbery.

Footnote 3: If defendant's presentencing incarceration were not used to extend the look-back period, he would be a second violent felony offender. The sentence for a second violent felony offender on a class B felony "must be at least ten years and must not exceed twenty-five years" (Penal Law § 70.04 [3] [a]).